UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANKIT KUMAR,<br><br>    Petitioner,<br><br>    v.<br><br>KRISTI NOEM, et al, *et al.*,<br><br>    Respondents. | Case No. C26-294-SKV<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Ankit Kumar is currently detained by United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his recent re-detention after being released from ICE detention in 2023 violated his constitutional right to due process under the Fifth Amendment to the United States Constitution. *See* Dkt. 1. Respondents have filed a return (Dkt. 5), together with the supporting declarations of ICE Deportation Officer Brandon Curran (Dkt. 6) and Respondents' counsel Jordan Steveson (Dkt. 7). Petitioner has filed a traverse in response to the return. Dkt. 8.

1  The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' re-detention of Petitioner, without prior notice or an opportunity to be heard, violated his constitutional right to due process. Accordingly, the Court GRANTS Petitioner's federal habeas petition, ORDERS his immediate release from custody under the same conditions previously imposed, and further ORDERS that he may not be re-detained during the pendency of his removal proceedings without first being provided adequate notice of the grounds for his re-detention and a hearing before a neutral decisionmaker.

## I. BACKGROUND

Petitioner is a native and citizen of India who entered the United States on or about August 5, 2023, without being inspected or admitted. *See* Curran Decl., ¶ 4; Steveson Decl., Ex. A at 1-2. Petitioner was arrested by United States Border Patrol on August 11, 2023, and was processed for expedited removal with credible fear. *See* Curran Decl., ¶ 5; Steveson Decl., Ex. A at 3, Ex. B. On August 30, 2023, United States Citizenship and Immigration Services ("USCIS") conducted a credible fear interview with Petitioner and found he had a credible fear of returning to India. Curran Decl., ¶ 6.

On September 1, 2023, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with being removable under Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").[1] Curran Decl., ¶ 7; Steveson Decl., Ex. C. On September 7, 2023, ICE issued an Interim Notice Authorizing Parole and Petitioner was released from ICE custody under INA § 212(d)(5)(A).[2] The notice authorizing parole specifically provided that it was valid for one year from the date on the notice and would "automatically terminate upon your departure or removal from the United States or at the end of

---

[1] These sections of the INA are codified at 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1182(a)(6)(A)(i).
[2] This section of the INA is codified at 8 U.S.C. § 1182(d)(5)(A).

the one-year period unless ICE provides you with an extension at its discretion." Steveson Decl., Ex. D at 1. An attached "Continuation Page for Interim Notice Authorizing Parole" advised Petitioner that he had been released from custody "pending a final decision in [his] exclusion/deportation hearing" with no reference to any expiration date. *See id.*, Ex. D at 2.

Petitioner's parole was "conditioned on [his] compl[iance] with the terms and conditions of [his] release. Steveson Decl., Ex. D at 1. Among the conditions imposed were that Petitioner "report for every scheduled hearing before the immigration court and every appointment as directed by ICE," and that he be enrolled in an Alternatives to Detention ("ATD") program. *Id.*, Ex. D at 1, 3.

On March 18, 2024, Petitioner filed an application for asylum and related relief from removal with the Executive Office for Immigration Review in Seattle, Washington. *See* Curran Decl., ¶ 9.

Respondents aver that between November 2024 and January 2026, Petitioner violated the terms and conditions of his ATD by missing six check-ins with DHS. Curran Decl., ¶ 10. Petitioner maintains he attended every ICE check-in and otherwise fully complied with the conditions of his release. Dkt. 1 at 2, 5. Petitioner reports one anomaly in his efforts to comply with his reporting requirements. According to Petitioner, on January 13, 2026, he went in for a scheduled ICE check-in, but his name was not called and when he asked an ICE officer about it, he was instructed to wait. *Id.* at 5. Petitioner waited until 5:00 p.m., was apparently never called, and returned home. *Id.* On January 15, 2026, Petitioner received a call instructing him to report for another check-in on January 16, 2026. *Id.*

Petitioner reported to the Seattle ICE Enforcement and Removal Operations ("ERO") Field Office for his scheduled reporting on January 16, 2026, and he was arrested by ERO

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

1  officers for the alleged violations of the conditions of his ATD.  Curran Decl., ¶¶ 11-12; Dkt. 1 at
2  5; *see also* Steveson Decl, Ex. E at 2.  Petitioner was placed in custody at NWIPC where he
3  currently remains.  Curran Decl., ¶¶ 12, 14.

4        On the day of his re-detention, Petitioner requested that an immigration judge review his
5  custody determination, but no review had been conducted as of the date Respondents filed their
6  return in this matter.  *See* Curran Decl., ¶ 13.  Petitioner was scheduled for a master calendar
7  hearing in the Tacoma immigration court on February 23, 2026 (*id.*), after the briefing in this
8  matter was complete, and no additional information regarding the hearing has been shared with
9  the Court.

10                 **II.    DISCUSSION**

11       The Constitution guarantees the availability of the writ of habeas corpus "to every
12 individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)
13 (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in
14 custody upon the legality of that custody, and . . . the traditional function of the writ is to secure
15 release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas
16 corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the
17 Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has
18 served as a means of reviewing the legality of Executive detention, and it is in that context that
19 its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a
20 district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*
21 *Davis*, 533 U.S. 678, 687 (2001).

22       Petitioner claims here that his re-detention following release constitutes a deprivation of
23 liberty without due process of law in violation of the Fifth Amendment.  *See* Dkt. 1 at 10.  He

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

asserts in his petition that he was previously released on an order of recognizance, he fully complied with the conditions of his release while at liberty and he was not provided written notice or a hearing prior to his re-detention to determine whether his re-detention was justified.[3] *See id.* at 5. Respondents argue in response that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(1). *See* Dkt. 5 at 5-7.

### A. 8 U.S.C. § 1225(b)/Parole

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the Unites States ('applicants for admission' in the language of the statute)." *Id.* at 297. Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention.

---

[3] Petitioner acknowledges in his traverse that he was released on temporary humanitarian parole and not on an order of release on recognizance as represented in his petition. *See* Dkt. 8 at 2-3.

However, noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See Jennings*, 583 U.S. at 288. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole terminates automatically upon a noncitizen's departure from the United States or, if the noncitizen has not departed, "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). No written notice is required for automatic termination. Parole may also be terminated, on notice, "upon accomplishment of the purpose for which parole was authorized," or when a DHS official with authority decides that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). Written notice must be provided to the noncitizen when termination is based on the reasons set forth in § 212.5(e)(2)(i). Upon termination of parole, the noncitizen is restored to the status he had at the time of parole. *See Jennings*, 583 U.S. at 288; *see also* 8 C.F.R. §§ 212.5(e)(1), (e)(2)(i).

Respondents appear to argue that, under this statutory framework, Petitioner is lawfully detained because (1) he is an applicant for admission who was placed in expedited removal proceedings under § 1225(b)(1) shortly after entry into the United States, (2) his temporary

1  humanitarian parole under § 1182(d)(5) has expired, (3) his status has now reverted to the status
2  he had at the time of parole, *i.e.*, § 1225(b)(1), and (4) his current status mandates detention.  *See*
3  Dkt. 5 at 5-6.  Respondents go on to suggest, though they do not clearly argue, that because
4  Petitioner is subject to mandatory detention, due process principles do not apply.  *See id.* at 6.
5  However, as courts in this district have recognized, the fact that the government may believe it
6  has a valid reason to detain a noncitizen "does not eliminate its obligation to effectuate the
7  detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d
8  1315, 1322 (W.D. Wash. 2025); *see also Zavorin v. Wamsley*, 2026 WL 309733, at *5 (W.D.
9  Wash. Feb. 5, 2026)).  Thus, the Court now turns to Petitioner's due process argument.

### B.   Due Process

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690.  It is well established that due process rights extend "to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While due process is flexible and adequate procedural protections can vary based on the circumstances, *Mathews* 424 U.S. at 334, courts look to the three-part test established in *Mathews v. Eldridge* to determine what procedures suffice. The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. "In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention context[.]'" *E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Petitioner argues the same framework and principles apply here. *See* Dkt. 1 at 8-9. Consistent with prior precedent, this Court agrees the *Mathews* test is applicable here and it will therefore address the three factors below.

First, Petitioner has a constitutionally protected interest in his continued liberty. Petitioner's interest in not being detained "is the most elemental of liberty interests[.]" *Hamdi*, 542 U.S. at 529. Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A), and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Zavorin*, 2026 WL 309733, at *3-4; *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). District courts in the Ninth Circuit have also recognized that a "petitioner's liberty interest [does]

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

1  not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det.
2  Facility*, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *see also G. G. v. Kaiser*, 2025 WL
3  3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37.

4        Because Respondents appear to reject the notion that Petitioner has a protected interest at
5  stake, they do not engage in any discussion of the *Mathews* factors. However, consistent with
6  prior decisions of judges in this district and elsewhere, this Court concludes that Petitioner had a
7  strong private interest in his continued liberty and, thus, the first *Mathews* factor weighs in his
8  favor.

9        Second, the circumstances of Petitioner's re-detention underscore the high risk of
10 erroneous deprivation of his liberty absent a pre-detention hearing. Respondents suggest that
11 Petitioner was properly re-detained on January 16, 2026, because his temporary humanitarian
12 parole term had expired. *See* Dkt. 5 at 6-7. However, the Record of Deportable/Inadmissible
13 Alien, Form I-213, prepared at the time of Petitioner's arrest notes only that Petitioner was
14 previously released on parole, it makes no mention of the fact that his parole had expired. *See*
15 Steveson Decl., Ex. E at 2. The reason cited for Petitioner's re-detention in the Form I-213 was
16 that "routine system queries" revealed he "had multiple violations and was not complying with
17 his [ATD] conditions." *Id.* Deportation Officer Curran avers in his declaration that Petitioner
18 missed six check-ins during a span of approximately fourteen months extending back to
19 November 2024. Curran Decl., ¶ 10. Notably, all of the alleged violations occurred after
20 Petitioner's parole term had apparently expired, yet ICE made no attempt to return Petitioner to
21 custody until recently. Respondents offer no explanation for why it took ICE so long to act,
22 though the record suggests an answer, *i.e.*, that ICE did not deem these alleged technical
23 violations sufficiently serious to warrant a return to custody.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

      Also notable is Petitioner's account of what transpired when he appeared for a scheduled check-in on January 13, 2026, three days prior to his arrest. *See* Dkt. 1 at 5. According to Petitioner, his name was never called and he simply returned home at the end of the day. *Id*. According to Petitioner, he received a call two days later instructing him to report for another check-in the following day. *Id*. When Petitioner reported for that check-in, he was arrested. *Id*. Petitioner asserts in his petition that he was re-detained on the pretext that he failed to attend his January 13, 2026, check-in. *Id*. Respondents do not directly dispute Petitioner's account of events preceding his arrest, though the Court observes that Officer Curran does not identify January 13, 2026, as one of the purported missed check-ins. *See* Curran Decl., ¶ 10. He does, however, identify January 15, 2026, as the date of a missed check-in, a representation that is inconsistent with Petitioner's unchallenged account of events in the days preceding his arrest. *See id.*

      Petitioner's re-detention prior to a hearing at which the anomalies in the record could have been addressed, and any other factual questions regarding Petitioner's compliance with reporting requirements could have been resolved, maximized the risk that his liberty interest would be erroneously deprived. The second *Mathews* factor favors Petitioner.

      Finally, the government's countervailing interest in detaining Petitioner prior to a hearing is minimal. Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas,* 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community"). While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant

1  liberty interest.  *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the
2  government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing
3  so; but its interest in doing so without a hearing is low."). Though requiring a pre-detention
4  process in this case would present some administrative burden, given the high risk of erroneous
5  deprivation and the fundamental liberty interest at stake, providing no pre-detention process is
6  constitutionally deficient.

7        In sum, all three *Mathews* factors weigh in Petitioner's favor and, thus, this Court finds
8  Petitioner should be immediately released from custody.  Petitioner, in conjunction with his
9  request for release from custody, asks that Respondents be prohibited from re-detaining him
10 during the pendency of his removal proceedings without providing written notice and a hearing
11 prior to re-detention at which Respondents would bear the burden of proving by clear and
12 convincing evidence that he is a flight risk or a danger to the community, and that no alternatives
13 to detention would mitigate those risks.  Dkt. 1 at 13

14       The Court concurs that, consistent with the requirements of due process, Respondents
15 must provide written notice and a hearing before a neutral decisionmaker prior to any re-
16 detention of Petitioner.  The Court also finds that Respondents bear the burden of proving by
17 clear and convincing evidence that Petitioner is a flight risk or a danger to the community at any
18 subsequent re-detention hearing.  *See Pinchi v. Noem*, 792 F.Supp.3d 1025, 1038 (N.D. Cal. July
19 24, 2025) (Holding Petitioner may not be detained unless the government demonstrates at a bond
20 hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and
21 that no conditions other than her detention would be sufficient to prevent such harms.).  To the
22 extent Petitioner requests that Respondents also be required to consider alternatives to detention
23

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

at any re-detention hearing, he fails to establish this additional procedural protection is constitutionally required.  *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024).

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours.  Respondents shall file a certification within 48 hours that Petitioner has been released.  The Court further ORDERS that Petitioner shall not be re-detained without first being provided adequate notice and a hearing before a neutral decisionmaker at which Respondents bear the burden of proof.  Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 10th day of March, 2026.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge